UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| First Reliance Bank, ) | Civil Action No.: 4:14-cv-00084-BHH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **Opinion and Order** |
| Curtis J. Romig, Esquire, Bryan ) | |
| Cave, LLP, and Bryan Cave Powell ) | |
| Goldstein, LLP, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on the defendant Curtis J. Romig's motion to dismiss for lack of personal jurisdiction, (ECF No. 4), and the motion by all of the defendants for dismissal pursuant to S.C. Code § 15-36-100 and Federal Rule of Civil Procedure 41(b), (ECF No.14). For the reasons set forth below, the Court denies both motions.

## **BACKGROUND**

In this legal malpractice action, the plaintiff, First Reliance Bank ("FRB"), a South Carolina bank with its principal place of business in Florence, seeks to recover against one of its former attorneys, Curtis J. Romig ("Romig"), and his law firm, Bryan Cave ("Bryan Cave"), formerly Bryan Cave Powell Goldstein.[1] The operative complaint (the "Second Complaint") alleges that Bryan Cave has provided legal services to FRB on a "wide variety of banking issues" "since approximately 2002." (Second Compl. ¶ 5, ECF No. 1.)

---

[1] According to the plaintiff, in 2009, Bryan Cave "merged" with Powell Goldstein. The Atlanta office of Bryan Cave, which was formerly the headquarters of Powell Goldstein, was known as "Bryan Cave Powell Goldstein" up until 2011. The entire firm now goes by the name "Bryan Cave."

1

The plaintiff's dispute with Bryan Cave and Romig arises out of Romig's alleged failure to submit proper and timely claims for insurance proceeds against at least one "Select One" insurance policy issued by St. Paul Travelers ("Travelers"). The policy or policies at issue were advertised to help protect community banks from "problem loans," that could result in claims of negligence against the banks for disclosing inaccurate information about potential borrowers to third parties such as investors. (Second Compl. ¶ 10.)

FRB filed its initial complaint (the "First Complaint") against Bryan Cave and Romig on May 28, 2013, (*see* ECF No. 14-3). The First Complaint alleged that FRB had coverage for demands for repayment under either or both of two separate insurance policies, "SelectOne Insurance Policy No. EC03200338 with a policy period from November 1, 2006, to November 1, 2009" (the "06 Policy"), and "SelectOne Insurance Policy No. EC03200629 [with] a policy period from November 1, 2009, to November 1, 2010" (the "09 Policy"). (First Compl. ¶ 29.) As required under South Carolina law, FRB filed an expert affidavit (the "First Expert Affidavit") with its First Complaint, which was provided by Professor Gerald M. Finkel, an attorney and well-recognized expert in the field of insurance law.

Subsequent to FRB's filing of the First Complaint, the parties entered into a tolling agreement while they sought to resolve the matter through mediation. When the parties were unable to settle the case, FRB filed a second complaint (the "Second Complaint"), which is the operative complaint in this action. The Second Complaint was filed on December 12, 2013 in the Court of Common Pleas for the County of Florence and removed to this Court on diversity grounds on January 10, 2014, (ECF No. 1).

2

Again, the plaintiff's Second Complaint was accompanied by an expert affidavit from Professor Finkel (the "Second Expert Affidavit").

On January 17, 2014, Romig moved to dismiss the Second Complaint against him on the grounds that the Court lacks personal jurisdiction over him, (ECF No. 4). Bryan Cave has not moved for dismissal on these grounds. The plaintiff's filed a response in opposition to the motion to dismiss, (ECF No. 36), and the defendants filed a reply, (ECF No. 37). Additionally, the defendants moved for dismissal pursuant to South Carolina Code Section 15-36-100 and Rule 41(b) of the Federal Rules of Civil Procedure, (ECF No. 14), based on allegations that the plaintiff's Second Expert Affidavit is defective because Professor Finkel based his opinion on a review of the wrong insurance policy and that the plaintiff's counsel committed "fraud on the court." The plaintiff filed a response in opposition to the motion, (ECF No. 25), and the defendants filed a reply, (ECF No. 28). On May 29, 2014, the plaintiff filed a "supplement," (ECF No. 44), which attached the Affidavit of Daryl J. Corbin, one of the plaintiff's attorneys, who provided an affidavit that explained the series of events that led Professor Finkel to review the "wrong" policy and explained that it was the result of a mistake, not fraud on the court. The plaintiff filed a reply to the supplement on June 6, 2014, (ECF No. 46).

## **DISCUSSION**

The Court will review the motions separately, beginning with Romig's motion to dismiss for lack of personal jurisdiction and then addressing the defendants' motion to dismiss pursuant to South Carolina Code Section 15-36-100 and Federal Rule of Civil Procedure 41(b).

3

I.  **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. v. Flagship Resort Dev.,* 416 F.3d 290, 294 (4th Cir. 2005).  However, where the a court addresses the question solely on the basis of "motion papers, supporting legal memoranda and the relevant allegations of a complaint," the plaintiff's burden "is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*  In evaluating the plaintiff's showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

The South Carolina Supreme Court analyzes specific jurisdiction in a two-step process, first examining the applicability of specific subsections of the South Carolina long arm statute and then examining whether jurisdiction violates the due process clause.  *See S. Plastics Co. v. S. Commerce Bank,* 310 S.C. 256, 423 S.E.2d 128, 130 (S.C. 1992).  However, because the South Carolina Supreme Court has held that the South Carolina long arm statute is deemed to reach "the outer limits of due process," federal courts normally conduct a single inquiry under the due process clause.  *Fed. Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 n. 2 (4th Cir.1989).  "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

4

There are two types of personal jurisdiction, "general" and "specific." General jurisdiction arises out of a defendant's "enduring relationship with the forum state," and his connection to and activities in the forum. *Global Tech. Int'l, Ltd. v. Cont'l Auto. Sys., Inc.*, CA 0:12-3041-CMC, 2013 WL 1809773 (D.S.C. Apr. 29, 2013) (citing S.C. Code Ann. § 36–2–802). Activities giving rise to general jurisdiction need not be related to the alleged acts or omissions giving rise to the action, but must be sufficiently involved or enduring that the defendant would reasonably "expect to be subject to suit" within the jurisdiction on "any claim" and "would suffer no inconvenience from defending there." *Gossett v. HBL, LLC*, CIV.A.2:06-123-CWH, 2006 WL 1328757 (D.S.C. May 11, 2006). Thus, general jurisdiction requires a showing that "the defendant's activities in the state" were "continuous and systematic." *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (quotation marks and citation omitted). Here, FRB concedes that the Court lacks general jurisdiction over Romig, and instead argues that the Court has specific jurisdiction. (*See* ECF No. 36, at 7 n.1.)

In contrast to general jurisdiction, specific jurisdiction may arise where "the defendant's contacts with the forum state also provide the basis for the suit." *Id.* To determine whether specific jurisdiction exists, courts consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (quotation marks and citation omitted).

In their reply, the defendants rely on the Supreme Court's February 25th ruling in *Walden v. Fiore,* 134 S. Ct. 1115 (2014). In *Walden*, the plaintiffs filed a *Bivens* action

in their home state of Nevada against a DEA agent who had seized funds from them in the Atlanta airport and subsequently submitted a probable cause affidavit to the United States Attorney's office in Georgia. *Id.* at 1119–20. Although the agent knew that the plaintiffs were from Nevada, he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 1124. The district court dismissed the case for lack of personal jurisdiction, but the Ninth Circuit reversed, reasoning that the agent "'expressly aimed' his submission of the allegedly false affidavit at Nevada by submitting [a probable cause] affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id.* (quoting *Fiore v. Walden*, 657 F.3d 838, 850 (9th Cir. 2011)).

The Supreme Court reversed, observing that it had "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State," and emphasizing that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 134 S. Ct. at 1122, (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Court also explained that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id*. The Ninth Circuit's error was "shifting the analytical focus from petitioner's contacts with the forum to his contacts with respondents." *Id.* at 1124.

This Court does not understand *Walden* to have changed the minimum contacts analysis, but rather to have clarified and reemphasized what previous decisions had already held, that the plaintiff must be connected to the forum state through his or her

6

own actions, and not merely through his or her impact on the defendant or another person residing in the forum. With these clarifications in mind, the Court turns to the three-part test described by the Fourth Circuit in *Carefirst*.

### A. <u>Purposeful Availment</u>

The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (quotation marks and citation omitted). On the other hand, purposeful availment does not require that a defendant ever be physically present in the forum state. As the *Burger King* Court observed, "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* at 475-76; *see also Klump v. Duffus*, 71 F.3d 1368, 1372 (7th Cir. 1995) (In a legal malpractice case, "the proper focus of [the] inquiry is not [the defendant attorney's] precise locale when the [malpractice occurs] but whether the contacts proximately resulting from [the] representation . . . created a sufficient connection with [the forum state] such that [the defendant attorney] 'personally availed' himself of the privilege of conducting activities there."). The ability of a wide range of professionals, including lawyers, to conduct business remotely has only grown in the nearly thirty years since *Burger King* was decided.

The Fourth Circuit has set forth a list of factors for courts to consider in determining whether a defendant has purposefully availed itself of the privilege of conducting activities in a forum state, including:

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278-79 (4th Cir. 2009) (quotation marks and citation omitted). .

Some of these factors weigh against this Court's exercise of jurisdiction over Romig, while others support it. On the one hand, Romig does not maintain an office or agent in South Carolina and owns no property here. (ECF No. 4-2 ¶¶ 5, 9.) There does not appear to be any agreement that South Carolina law will govern the relationship between Romig and FRB. Romig alleges he did not solicit business from FRB or any other South Carolina client, but was referred the matter by one of his colleagues at Bryan Cave. (ECF No. 4-2 ¶¶ 8, 13.) Prior to the malpractice dispute that gave rise to this action, Romig never travelled to South Carolina in connection with his representation of FRB. (ECF No. 4-2 ¶ 12.) Romig claims that he performed most of the work in Georgia and performed all of the work in states other than South Carolina. (ECF No. 4-2 ¶ 14.) Additionally, Romig is not licensed to practice in South Carolina and has never appeared in a South Carolina court or been admitted *pro hac vice*. (ECF No. 4-2 ¶¶ 3, 6.)

On the other hand, while Romig may not have initiated the relationship with FRB he accepted a role as the lead attorney representing a South Carolina client on claims that arose in South Carolina. This representation was neither fleeting nor insignificant,

8

but lasted for over two years and resulted in FRB allegedly paying Bryan Cave hundreds of thousands of dollars in legal fees. (*See* ECF No. 1-1 ¶ 5.) During the course of the representation, Romig and his agents made at least 74 contacts with FRB by letter, email, or telephone. (*See* ECF No. 36 at 4.) Romig was scheduled to travel to South Carolina for an in person meeting with FRB representatives regarding the claims he was pursuing, however, Romig was ultimately asked to participate by telephone in order to save money on legal fees. (*See* ECF No. 4-2 ¶ 12.) In the course of the representation, Romig submitted to FRB a proposed litigation budget for claims that were to be filed in South Carolina, instructed his associate to research South Carolina law regarding the proper venues for the potential lawsuits, and sent letters to South Carolina businesses threatening to sue them on FRB's behalf. (*See* ECF No. 36-9 (Watson[2] e-mail to Dale Porter proposing litigation budget); ECF No. 36-10 (Romig e-mail to Dale Porter following up on e-mail proposing litigation budget); ECF No. 36-11 Bryan Cave invoice to FRB charging FRB for time spent preparing litigation budget); ECF No. 36-12 Watson e-mail to Romig with litigation budgets); ECF No. 36-13 (additional Romig e-mail to Dale Porter concerning litigation budgets); ECF No. 36-14 (Watson email to Romig regarding legal research on venue for lawsuits against mortgage brokers to be filed in South Carolina); ECF No. 36-5 (letter that Romig sent to a mortgage wholesaler threatening litigation); ECF No. 36-6 (same).)

      Based on these facts, the Court concludes (1) that Romig deliberately engaged in significant or long-term business activities in South Carolina, (2) that the nature, quality and extent of the parties communications about the business being transacted was substantial, and (3) that the performance of significant duties contemplated by the

---

[2] Matthew Watson ("Watson") was an associate at Bryan Cave during the relevant period.

9

parties relationship was to occur within South Carolina. Of particular significance is the fact that the disputes underlying Romig's representation appear to have arisen in South Carolina, such that they would have been litigated in this jurisdiction.

The parties cite numerous cases where courts have considered whether an out-of-state attorney sued for malpractice may be required to defend an action in the client's home jurisdiction. A review of these cases (and other similar cases that this Court has found) indicates that the decisions go both ways. *Cf Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995); *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir. 1986); *Mayes v. Leipziger*, 674 F.2d 178 (2d Cir. 1982); *Dagen v. Book*, 249 F.R.D. 362, 366 (D. Colo. 2008); *Tom Raper Homes, Inc. v. Mowery & Youell, Ltd.*, No. 1:06-cv-00394-SEB-JMS, 2007 WL 1035121, at *5 (S.D. Ind. Feb. 9, 2007); *Litchfield Fin. Corp. v. Buyers Source Real Estate Grp.*, 389 F. Supp. 2d 80, 82 (D. Mass. 2005); *Cape v. von Maur*, 932 F. Supp. 124,128 (D. Md. 1996) (all finding jurisdiction to be lacking) with *Streber v. Hunter*, 221 F.3d 701 (5th Cir. 2000); *Klump v. Duffus*, 71 F.3d 1368 (7th Cir. 1996); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996); *Parker v. Asbestos Processing, LLC*, 2014 WL 1154234, at *3 (D.S.C. Mar. 21, 2014); *Dennett v. Archuleta*, 915 F. Supp.2d 248 (D.R.I. 2013); *Wadlington v. Rolshouse*, Civ. Action No. 3:05CV–558–H, 2008 WL 1712293, at *6 (W.D.Ky. Apr. 9, 2008); *Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp.2d 688, 694 (D.S.C. 2007); *Allen v. James*, 381 F. Supp. 2d 495 (E.D. Va. 2005); *Kim v. Keenan*, 71 F. Supp. 2d 1228 (M.D. Fla. 1999); *Johnson v. Shaines & McEachern, P.A.*, 835 F. Supp. 685 (D.N.H. 1993); *Resolution Trust Corp. v. Farmer*, 836 F. Supp. 1123 (E.D.Pa. 1993); *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F.

Supp. 1424, 1457 (D. Ariz. 1992); *Schur v. Porter*, 712 F. Supp. 1140 (S.D. N.Y. 1989) (all finding jurisdiction to be proper).

Courts reviewing these and other similar cases have noted a "common theme" in their resolution: "where the legal malpractice claim is filed in the same forum as the original action serving as the predicate for the legal malpractice (or where it would have been filed), jurisdiction is found; where the legal malpractice claim is filed in a different forum, jurisdiction is lacking." *Dennett v. Archuleta*, 915 F. Supp. 2d 248, 253-54 (D.R.I. 2013). *See also Allen v. James*, 381 F. Supp. 2d 495, 498 (E.D. Va. 2005) ("[C]ourts have suggested that the question of personal jurisdiction in legal malpractice situations involving out-of-state attorneys may turn on where the underlying lawsuit would have been prosecuted and which state's law would have applied.").

This "theme" is consistent with what this Court observes in the case law. While each case must be evaluated on its own individual facts and the observation above is by no means a rule, it makes sense that jurisdiction is more likely to be found where the underlying litigation or dispute generating the malpractice action arises in the forum in which the malpractice action is subsequently brought. Often in such instances, jurisdiction is supported by the attorney's connection with the litigation or potential litigation, not merely the attorney's relationship with the client. Such an approach is consistent with the principles reemphasized in *Walden* because it recognizes the need for the defendant to be connected to the forum state by something more than a mere accusation of harming one of the state's residents. Here, jurisdiction is supported by Romig's significant involvement in what can fairly be considered a South Carolina dispute, not merely his representation of a South Carolina client.

11

### B. CLAIMS ARISE OUT OF ACTIVITIES DIRECTED AT THE STATE

"The analysis here is generally not complicated.  Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied."  *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009)).  "A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim."  *Tire Eng'g & Distribution, LLC*, 682 F.3d at 303 (4th Cir. 2012).  FRB's claims arise from Romig's representation of a South Carolina client in disputes that originate in South Carolina.  Furthermore, as noted, Romig and his associates engaged in substantial correspondence with the South Carolina based FRB, and that correspondence is significant to this litigation.  Accordingly, this Court finds that FRB's claims arise out of activities directed at South Carolina.

### C. CONSTITUTIONALLY REASONABLE

The final prong of the three-part test for personal jurisdiction considers whether the exercise jurisdiction is "constitutionally reasonable."  This prong of the analysis is intended to ensure "that litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'"  *CFA Inst.,* 551 F.3d at 296 (quoting *Burger King Corp.*, 471 U.S. at 476).  As this Court has noted before, "defeat of an otherwise constitutional exercise of personal jurisdiction on the grounds of unreasonableness is 'limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so

attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *ESAB Grp., Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 329 (D.S.C. 1999) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).

Romig has not argued that requiring him to litigate this case in South Carolina is constitutionally unreasonable. As plaintiff points out, even if this Court were to hold that it lacks jurisdiction over Romig, he will remain involved in this lawsuit because Bryan Cave has not contested jurisdiction. Thus, dismissing the claims against Romig will not spare him the "inconvenience" of litigating in South Carolina. Requiring Romig to travel from Georgia to South Carolina in connection with this action is not burdensome. Finally, South Carolina courts have a substantial interest in resolving legal malpractice actions that arise in the course of South Carolina litigation or disputes. Accordingly, the Court finds its exercise of personal jurisdiction over Romig in the instant action to be constitutionally reasonable.

## II.   MOTION TO DISMISS FOR VIOLATION OF S.C. CODE § 15-36-100 OR FRCP 41.

In addition to the motion to dismiss the claims against Romig for lack of personal jurisdiction, the defendants jointly move for dismissal of all of the claims on the grounds that the plaintiff's expert affidavit is defective because the plaintiff provided its expert with the wrong insurance policy. South Carolina Code § 15-36-100(B) requires that plaintiffs in various malpractice suits, including legal malpractice actions, "file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit." If a plaintiff fails to file the required affidavit, the defendant may seek dismissal of the complaint in a "motion to

13

dismiss filed contemporaneously with its initial responsive pleading." S.C. Code § 15-36-100(C)(1). The complaint may also be dismissed if the defendant "alleges, with specificity, by motion to dismiss filed contemporaneously with its initial responsive pleading, that the affidavit is defective." S.C. Code § 15-36-100(E). However, "the plaintiff may cure the alleged defect by amendment within thirty days of service of the motion alleging that the affidavit is defective." *Id.*

As set forth above the plaintiff's First Complaint alleged that FRB had coverage for demands for repayment under either or both the 06 Policy and the 09 Policy, and the First Expert Affidavit supported this position. After attempting unsuccessfully to mediate the case, the plaintiff filed the Second Complaint. Unlike the First Complaint, the Second Complaint focused exclusively on the 06 Policy and conceded that there was no coverage under the 09 Policy. (*See* Second Compl., ¶¶ 27, 49, & 52.) The plaintiff also submitted what it claimed were portions of the 06 Policy as Exhibits 2, 3, and 4 to the Second Complaint and the Second Expert Affidavit, which supported the claims in the Second Complaint. At some point, the defendants realized that the documents attached to the Second Complaint were actually excerpts of the 09 Policy instead of the 06 Policy. After requesting and obtaining the documents that the plaintiff had given to Professor Finkel, the defendants determined that he had reviewed the 09 Policy instead of the 06 Policy, as he claimed in his affidavit.

By the time the defendants reached these conclusions, the time for filing a motion to dismiss on the basis of a defective affidavit had expired. Nevertheless, the defendants argue that the Court should disregard S.C. Code § 15-36-100(E)'s requirement that their specific allegation that the affidavit is defective be "filed contemporaneously with [their] initial responsive pleading" because they did not know

14

and could not have known about the deficiency until they received Professor Finkel's file, which was after the deadline for their first responsive pleading had passed, and because their inability to reach this conclusion within the deadline was the plaintiff's fault. (*See* ECF No. 14-1 at 2-3.) The defendants also argue that plaintiff should not be allowed to avail itself of the 30-day window to cure a defect in the affidavit because allowing it to do so would effectively extend the statute of limitations. (*See id.* at 10-13.)

S.C. Code § 15-36-100 contains no exception to the requirement that defects in a plaintiff's affidavit must be raised in a defendant's first responsive pleading, S.C. Code § 15-36-100(E), and the Court declines to infer the existence of such an exception in this case.[3] While the defendants' argue that they could not have discovered the deficiency in Professor's Finkel's affidavit until the plaintiff turned over the necessary information, it is not at all unusual for a defendant to have limited information at the time for filing the first responsive pleading. If the legislature intended to allow defendants to go beyond the facial validity of an expert's affidavit and conduct discovery to attack the substantive basis of the opinion or the materials considered by the expert, it would have provided time for discovery or the exception that the defendants ask this Court to infer. To be sure, the defendants will have an opportunity to thoroughly challenge the merits of the plaintiff's case, including any expert opinions that the plaintiff provides; however, a motion to dismiss for failure to comply with S.C. Code § 15-36-100 is not the proper place for such a challenge.

Furthermore, the statute requires that plaintiff's expert affidavit identify "at least one negligent act or omission"; Professor Finkel's affidavit identifies no less than eleven

---

[3] The Court need not decide whether a showing that a plaintiff deliberately concealed a deficiency in an expert affidavit would justify the existence of an exception because the defendants have not convincingly established that the plaintiff deliberately concealed anything.

(11) acts or omissions that he contends were negligent. (*See* Affidavit of Expert Gerald M. Finkel, Esq. ¶ 56 A-K, ECF No. 25-2.) The Court is not convinced that an understanding of the differences between the 06 Policy and the 09 Policy was critical to Professor Finkel's ability to allege each and every one of the acts or omissions he claims were negligent. Professor Finkel's affidavit indicates that, in addition to policy documents, he reviewed more than fifty (50) other documents related to the defendants' representation of FRB. (*See* ECF No. 25-1 ¶ 9.) Consequently, the Court is not convinced that Professor Finkel's review of portions of the 09 Policy in place of (substantially similar or identical) portions of the 06 Policy renders the affidavit so fatally flawed as to warrant dismissal. Finally, Professor Finkel has indicated in his subsequent affidavit that a review of the actual 06 Policy has not changed any of his conclusions regarding liability or damages. (*See* Supplemental Affidavit of Expert Witness Gerald M. Finkel, Esq. ¶ 8, ECF No. 25-3.) Thus the Court finds that Professor Finkel's affidavits are sufficient to satisfy the minimal requirements of S.C. Code § 15-36-100.

Alternatively, the defendants ask the Court to dismiss the plaintiff's complaint on the grounds that "the plaintiff's misconduct in connection with the insurance policy at issue and the manner in which it obtained the expert affidavit and the filing of the complaint, warrant dismissal of this complaint under Rule 41(b) and this Court's inherent power to control the integrity of the judicial system." (ECF No. 14 at 1.) The defendants essentially allege that plaintiff intentionally submitted the wrong policy to Professor Finkel because it did not have the 06 Policy and was running up against the statute of limitations.

On May 29, 2014, the plaintiff filed a notice of supplemental filing, (ECF No. 44), attaching a lengthy affidavit from one of the plaintiff's attorneys, Daryl J. Corbin.[4] Corbin's affidavit explains that his submission of language from the 09 Policy instead of the 06 Policy was the result of an "innocent mistake" and denies any intent to commit fraud on the Court or to trick the defendants or their attorneys. (*Id.* ¶¶ 7, 15.) Corbin's affidavit points out that at a mediation session with the defendants on November 8, 2013, session he made a PowerPoint presentation which he now knows "misidentified a portion of the [09 Policy] as the [06 Policy]." (*Id.* ¶ 8.) At the time, Corbin had believed that the defendants had a copy of the 06 Policy because Romig had previously billed FRB for review of the 06 Policy. (*See* ECF 44-1). It seems unlikely that Corbin would knowingly present opposing counsel with the wrong policy when, at the time, he had every reason to believe that the defendants had both policies. What now seems more likely is that both parties may have mistaken the 09 Policy for the 06 Policy, not that anyone committed fraud.

"Fraud on the court is a serious allegation . . . involving 'corruption of the judicial process itself.'" *Cleveland Demolition Co. v. Azcon Scrap Corp., a Div. of Gold Fields Am. Indus.*, 827 F.2d 984, 986 (4th Cir. 1987) (quoting *In re Whitney-Forbes,* 770 F.2d 692, 698 (7th Cir. 1985)). As such, it is not an accusation that should be lightly leveled by a party or a conclusion lightly reached by the Court. While the Court cannot be certain why the plaintiff submitted the wrong policy to its expert, that it was the product of innocent error seems possible if not likely. Ironic as this observation may be in the

---

[4] In their reply memorandum, the defendants pointed out that the supplement was filed after briefing on the relevant motion to dismiss had closed. The Court notes the timing of plaintiff's filing, but also notes that the defendants argued in their reply that the plaintiff's failure to provide an explanation for the misidentification of the policies was "tantamount to an admission that its intent was to deceive Bryan Cave and this Court," (*see* ECF No. 28), an accusation to which the plaintiff was entitled to respond.

context of a legal malpractice action, lawyers do make honest mistakes, and not every one of them warrants a sanction. The Court understands that this litigation has the potential to raise strong feelings on both sides, but it would urge the parties to give one another the benefit of the doubt where possible. The defendant has not convinced the Court that the plaintiff is guilty of anything more than an unfortunate mistake, and, accordingly, the motion to dismiss the complaint under Rule 41(b) is denied.

## **CONCLUSION**

For the reasons set forth above, Romig's motion to dismiss for lack of personal jurisdiction, (ECF No. 4), and the defendants' motion for dismissal pursuant to S.C. Code § 15-36-100 and Federal Rule of Civil Procedure 41(b), (ECF No. 14), are **DENIED.**

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

November 4, 2014
Greenville, South Carolina

18